## NO. 22-60674

In the United States Court of Appeals
For the Fifth Circuit

## J. KYLE BASS,

*Petitioner*

v.

## SECURITIES AND EXCHANGE COMMISSION,

*Respondent.*

## BRIEF OF PETITIONER J. KYLE BASS

**On petition for review from the Securities and Exchange Commission,
NCA 2018-079, Rel. No. 96439, File No. 2023-19**

Andrew W. Guthrie
Texas Bar No. 24078606
Katherine S. Addleman
Texas Bar No. 09005400
Ryan Paulsen
Texas Bar No. 24060397
HAYNES AND BOONE, LLP
2323 Victory Avenue, Ste. 700
Dallas, TX 75219
Telephone: (214) 651-5000
*andrew.guthrie@haynesboone.com*
*kit.addleman@haynesboone.com*
*ryan.paulsen@haynesboone.com*

**ATTORNEYS FOR PETITIONER**

# CERTIFICATE OF INTERESTED PERSONS

Case Number and Style:  No. 22-60674; *Bass v. Securities and Exchange Commission*

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

## I.    Petitioner

J. Kyle Bass

Counsel for Petitioner:

Andrew W. Guthrie
Katherine S. Addleman
Ryan Paulsen
HAYNES AND BOONE, LLP
2323 Victory Avenue, Ste. 700
Dallas, TX  75219

## II.    Respondent

Securities and Exchange Commission

Appellate Counsel for Respondent:

William K. Shirey
U.S. Securities and Exchange Commission
100 F. St., N.E.
Washington, D.C. 20549

Agency Counsel for Respondent:

Emily Pasquinelli
Eric Young
Laura Ordaz
Nicole C. Kelly
Office of the Whistleblower
U.S. Securities and Exchange Commission
100 F Street, N.E.
Washington, D.C. 20549

/s/ Andrew W. Guthrie
Andrew W. Guthrie
Counsel for Petitioner J. Kyle Bass

## STATEMENT REGARDING ORAL ARGUMENT

Kyle Bass respectfully requests the opportunity to present oral argument. This appeal challenges the SEC's arbitrary and inexplicable decision to reject Bass's request for a whistleblower award even after he provided valuable information about securities violations that led to the SEC recovering millions of dollars. That result is as unfair as it sounds, but the SEC's reasoning somehow made it worse. The agency first found that Bass (an individual) did not provide any information in his individual capacity—despite ample evidence showing just that—and in so doing, impermissibly added a presumption against individual action to the whistleblower statute. Worse yet, the SEC rejected Bass's whistleblower claim by enforcing a regulatory filing deadline that it did not enact until roughly four years *after* Bass initially blew the whistle. Though the inequity of the SEC's decision is hopefully clear enough, oral argument may assist the Court in resolving the legal issues raised in this appeal.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ...................................................... i

STATEMENT REGARDING ORAL ARGUMENT ........................................... iii

TABLE OF CONTENTS ......................................................................... iv

TABLE OF AUTHORITIES .................................................................... vi

ABBREVIATIONS AND RECORD REFERENCES ........................................... ix

JURISDICTIONAL STATEMENT .................................................................. 1

STATEMENT OF ISSUES PRESENTED ......................................................... 2

INTRODUCTION ..................................................................................... 3

STATEMENT OF THE CASE ...................................................................... 5

       A.    Kyle Bass personally uncovered evidence of a Ponzi-like scheme operated by a group of affiliated Texas real estate investment entities. ............................................................... 5

       B.    Bass personally provided whistleblower information to the SEC and personally filed a whistleblower claim. ............................... 6

       C.    Bass's information was vital to the SEC's successful efforts to obtain a multimillion-dollar recovery. ................................ 7

       D.    The SEC nevertheless denied Bass's application for a whistleblower award. ....................................................... 11

SUMMARY OF THE ARGUMENT ............................................................. 14

ARGUMENT ........................................................................................ 15

I.     The standard of review for the SEC's whistleblower decision, while "narrow," is "not toothless." ........................................... 15

II.    The SEC acted arbitrarily and capriciously in concluding that Bass did not act in his individual capacity and thus was not a whistleblower. .......................................................................... 18

A.    The SEC ignored undisputed evidence that contradicts its conclusion and shows that Bass provided information to the SEC in his individual capacity. ...................................... 19

B.    The SEC concocted a presumption against individual filer status that is unsupported by the statute. ......................................... 22

III.    The SEC acted arbitrarily and capriciously in retroactively imposing a filing deadline enacted nearly four years after Bass's initial filings and refusing to waive it. ........................................... 24

A.    The SEC's insistence on applying an after-the-fact regulatory deadline was legally impermissible, arbitrary, and capricious. .................................................................. 24

1.    The 30-day deadline applied by the SEC is inapplicable to Bass because it imposes an impermissible retroactive effect. .............................................26

2.    Retroactive imposition of the 30-day deadline to Bass is arbitrary and capricious. ............................... 31

B.    The SEC's refusal to apply its own waiver precedent as requested by Bass was arbitrary and capricious. ............................... 31

CONCLUSION AND PRAYER ...........................................................................34

CERTIFICATE OF SERVICE..............................................................................35

ECF CERTIFICATION.........................................................................................35

CERTIFICATE OF COMPLIANCE.....................................................................36

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Amin v. Mayorkas*,
  24 F.4th 383 (5th Cir. 2022).............................................................. 19

*Chamber of Com. v. U.S. Dep't of Lab.*,
  885 F.3d 360 (5th Cir. 2018) ................................................17, 22, 24

*Data Mktg. P'ship, LP v. U.S. Dep't of Lab.*,
  45 F.4th 846 (5th Cir. 2022) ........................................................ 16, 17

*Desoto Gen. Hosp. v. Heckler*,
  766 F.2d 182 (5th Cir. 1985).............................................................22

*Digital Realty Trust, Inc. v. Somers*,
  138 S. Ct. 767 (2018) ..........................................................................3

*Germain v. US Bank Nat'l Ass'n*,
  920 F.3d 269 (5th Cir. 2019) ...................................................... 26, 30

*Handley v. Chapman*,
  587 F.3d 273 (5th Cir. 2009) ...................................................... 26, 27

*Huawei Techs. USA, Inc. v. FCC*,
  2 F.4th 421 (5th Cir. 2021).......................................................... 17, 31

*Jupiter Energy Corp. v. FERC*,
  407 F.3d 346 (5th Cir. 2005) .................................................. 31, 32, 33

*Luminant Generation Co. v. EPA*,
  675 F.3d 917 (5th Cir. 2012) ............................................................ 17

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
  463 U.S. 29 (1983) ......................................................................18, 19

*Noranda Alumina, L.L.C. v. Perez*,
  841 F.3d 661 (5th Cir. 2016) .............................................................32

*Sierra Club v. EPA*,
    939 F.3d 649 (5th Cir. 2019) ........................................................ 17, 31

*Stryker v. SEC*,
    780 F.3d 163 (2d Cir. 2015) ............................................................... 1

*Sw. Elec. Power Co. v. EPA*,
    920 F.3d 999 (5th Cir. 2019) ........................................................... 22

*Tex. Med. Ass'n v. U.S. Dep't of Health & Hum. Servs.*,
    587 F. Supp. 3d 528 (E.D. Tex. 2022) ............................................. 23

*Texas v. United States*,
    40 F.4th 205 (5th Cir. 2022) ........................................................... 21

*United States v. Gutierrez*,
    443 F. App'x 898 (5th Cir. 2011) .................................................... 27

*Univ. of Tex. M.D. Anderson Cancer Ctr. v. U.S. Dep't of Health & Hum. Servs.*,
    985 F.3d 472 (5th Cir. 2021) ..................................................*passim*

*Util. Air Regul. Group v. EPA*,
    573 U.S. 302 (2014) ........................................................................ 24

*Wages & White Lion Invs., L.L.C. v. FDA*,
    16 F.4th 1130 (5th Cir. 2021) .................................................... 21, 26

*Whistleblower 21276-13W v. Comm'r*,
    144 T.C. 290 (T.C. 2015) ................................................................ 29

**Statutes**

5 U.S.C. § 706 ................................................................................... 16

15 U.S.C. § 78u-6 .......................................................................*passim*

**Other Authorities**

17 C.F.R. § 240.21F-9 (2011) .................................................... 25, 28

17 C.F.R. § 240.21F-9 ........................................................................ 25

17 C.F.R. § 240.21F-10 ...................................................................... 10, 11

17 C.F.R. § 240.21F-13 .......................................................................... 1

76 Fed. Reg. 34,300 (June 13, 2011) ............................................ *passim*

76 Fed. Reg. 53,172 (Aug. 25, 2011) ........................................................ 30

85 Fed. Reg. 70,898 (Nov. 5, 2020) ........................................................ 25

*In re Claim for Award*, Rel. No. 79747 (S.E.C. Jan. 6, 2017) ................................... 29

*In re Claim for Award*, Rel. No. 81227 (S.E.C. July 27, 2017) ................................. 29

*In re Claims for Award*, Determination No. 18-WB-01 (C.F.T.C. July 12, 2018) ................................................................ 30

*In re Claims for Award*, Determination No. 20-WB-02 (C.F.T.C. Dec. 19, 2019) ................................................................ 30

*In re Claims for Award*, Rel. No. 82181 (S.E.C. Nov. 30, 2017) ............................. 29

*In re Claims for Award*, Rel. No. 85412 (S.E.C. Mar. 26, 2019) ............................. 29

[Redacted] Final Order (S.E.C. Apr. 20, 2019) ...................................................... 28

[Redacted] Final Order (S.E.C. Feb. 11, 2019) ...................................................... 28

[Redacted] Final Order (S.E.C. Sept. 9, 2017) ...................................................... 28

*In re United Dev. Funding III, LP,* Rel. No. 89535 (S.E.C. Aug. 12, 2020) ................................................................ 10

S. REP. NO. 111-176 (2010) ...................................................... 30

# ABBREVIATIONS AND RECORD REFERENCES

## PARTIES:

"Bass" refers to Petitioner J. Kyle Bass.

"SEC" refers to Respondent Securities and Exchange Commission.

"Hayman" refers to Hayman Capital Management, LP.

"UDF" refers collectively to United Development Funding IV and other related entities.

## DOCUMENTS:

"Final Order" refers to the Order Determining Whistleblower Claims issued by the SEC on December 2, 2022 (AR:544-551).

## RECORD REFERENCES:

References to the Administrative Record shall be in the form of "AR:[page #]."[1]

References to entries on this Court's docket shall be in the form of "Dkt. _."

---

[1] As required by 5th Cir. R. 30.2(a), and because the SEC elected to file a certified list in lieu of the record itself, Bass will file and serve a copy of all relevant portions of the administrative record after the SEC files its response brief. For ease of the Court's reference, the documents in that copy of the record will be numbered using the format "AR:[page#]."

## JURISDICTIONAL STATEMENT

The SEC had jurisdiction to issue the December 2, 2022 Final Order under Section 21F(c) and (f) of the Securities Exchange Act of 1934, which authorizes the SEC to make determinations regarding whistleblower awards. 15 U.S.C. § 78u-6(c), (f); *see also* 17 C.F.R. § 240.21F-13(a) (same).

This Court has jurisdiction to review the SEC's denial of Bass's whistleblower award application. 15 U.S.C. § 78u-6(f); 17 C.F.R. § 240.21F-13(a) (permitting appeal of final award decision "to the United States Court of Appeals for the District of Columbia Circuit, or to the circuit where the aggrieved person resides or has his principal place of business"); Dkt. 1 at 2 (Bass resides and has his principal place of business in this circuit); *see also, e.g.*, *Stryker v. SEC*, 780 F.3d 163, 165 (2d Cir. 2015) ("Section 21F(f) of the Securities Exchange Act, 15 U.S.C. § 78u–6(f), authorizes us to review the SEC's denial of a whistleblower award."). Bass timely filed his petition for review on December 29, 2022 (Dkt. 1). *See* 15 U.S.C. § 78u-6(f) (decision "may be appealed to the appropriate court of appeals of the United States not more than 30 days after the determination is issued by the Commission").

## STATEMENT OF ISSUES PRESENTED

This appeal raises two sets of issues arising from the SEC's denial of Kyle Bass's request for a whistleblower award under 15 U.S.C. § 78u-6.

1.      Did the SEC act arbitrarily, capriciously, and otherwise contrary to law by concluding that Bass did not provide information as an individual where:

   a.    undisputed evidence established Bass's active, personal participation in providing valuable information to the SEC, and

   b.    the SEC concocted an atextual presumption imputing Bass's individual actions to his wholly-owned firm rather than to himself?

2.      Did the SEC act arbitrarily, capriciously, and otherwise contrary to law by enforcing a 30-day regulatory filing deadline that was enacted *four years after* Bass's initial filing and rejecting Bass's application as untimely because:

   a.    retroactive application of the deadline impermissibly imposed new duties and legal consequences on Bass;

   b.    application of the new rule to a long-completed action was arbitrary, capricious, and otherwise contrary to law; and

   c.    the SEC ignored numerous grounds that it has previously relied on to support waiver of deadlines in similarly situated cases?

## INTRODUCTION

The primary purpose of the SEC's whistleblower program is to "motivate people who know of securities law violations to tell the SEC." *Digital Realty Trust, Inc. v. Somers*, 138 S. Ct. 767, 773 (2018) (internal quotation omitted). To that end, the program's enabling statute declares that the SEC "*shall pay* an award or awards to 1 or more whistleblowers who voluntarily provided original information to the [SEC] that led to the successful enforcement" of a covered SEC action. 15 U.S.C. § 78u-6(b)(1) (emphasis added).

Kyle Bass took the SEC up on its offer. After discovering red flags indicating that several publicly-traded Texas entities were engaging in a Ponzi-like fraud scheme, Bass voluntarily determined to "tell the SEC" what he had found. This led to a series of meetings and discussions held over several months in which Bass and other representatives from his wholly-owned investment fund shared and explained hundreds of pages of proprietary analysis about the apparently illegal scheme.

The SEC ran with that information to pursue civil charges and obtained a multimillion-dollar recovery. The Department of Justice later secured criminal convictions against some of the same executives. But when Bass applied for an award under the SEC's whistleblower program, the SEC turned on him. Ignoring contradictory facts, the SEC determined that Bass's personal acts were really those

of his company and therefore concluded that he was somehow not an "individual" under the broad statutory definition of "whistleblower." Illogic aside, that finding flew in the face of undisputed evidence that Bass conducted the initial research in his individual capacity, provided it to the SEC in his individual capacity, and applied for the whistleblower award in his individual capacity. In rejecting that evidence to find that Bass didn't really act as an individual, the SEC effectively rewrote the statute to impose a presumption of entity activity that is nowhere in the statutory text.

To make matters worse, the SEC declared Bass's whistleblower application untimely because he failed to submit one particular regulatory form within 30 days of initially sharing his discoveries with the SEC. The biggest flaw in that conclusion: there *was no* 30-day-filing requirement in the SEC's rules until December 2020, almost four years *after* Bass submitted his initial filing. What could be more arbitrary and capricious than enforcing a deadline that didn't exist at the relevant time? As if to twist the knife even further, the SEC routinely waives this and other requirements in cases where whistleblowers make technical errors in providing valuable information—but it refused to grant such a deadline waiver for Bass.

The Court should set aside these arbitrary rulings on APA grounds and declare that Bass is entitled to some whistleblower recovery, to reaffirm the statutory

purpose of the SEC's whistleblower program: to encourage and reward—not trap and punish—diligent whistleblowers.

## STATEMENT OF THE CASE

**A.    Kyle Bass personally uncovered evidence of a Ponzi-like scheme operated by a group of affiliated Texas real estate investment entities.**

J. Kyle Bass is the owner, Chief Investment Officer, and Principal Executive of Hayman Capital Management, LP. (AR:220, 537.)[2] In those roles, Bass conducts extensive market research to inform and direct investment activities for himself and Hayman. (*See* AR:214, 538.) Beginning in 2014, Bass discovered significant red flags in the public filings of United Development Funding IV ("UDF IV"), a publicly-traded real estate investment trust that was ostensibly set up to loan money to residential real estate developers. (AR:6, 8, 220.) With the assistance of his research team at Hayman, Bass followed up on those red flags by conducting extensive due diligence over several months. (AR:220-221.) Using proprietary research and even personally visiting some of UDF IV's properties, Bass uncovered facts suggesting the existence of a Ponzi-like scheme involving UDF IV and other related entities (together, "UDF"). (AR:220-221, 223-224.)

---

[2] At all relevant times, Hayman Capital was wholly owned, directly or indirectly, by Bass or his family-related entities. (AR:537.)

The facts gathered by Bass and his team raised four primary red flags:

(1)    UDF apparently used funds raised by new investors to pay existing investors and stakeholders in previous UDF funds;

(2)    UDF extended high-risk loans to two related, financially distressed borrowers;

(3)    there appeared to be little or no development activity at the real estate sites funded by UDF; and

(4)    several late-stage events, including lawsuits and key resignations, suggested UDF was under financial distress and potentially evading tax obligations.

(AR:221-227.)

### B.    Bass personally provided whistleblower information to the SEC and personally filed a whistleblower claim.

Bass decided to alert federal officials to this extensive evidence suggesting wrongdoing on UDF's part. (AR:221, 537-538.) Bass initially asked Christopher Kirkpatrick—who served as both Hayman's general counsel and Bass's personal counsel—to contact the SEC on his behalf and arrange for a meeting to discuss his findings and conclusions. (AR:537, 542.) When those efforts proved unsuccessful, Bass drew on his personal contacts to set up an in-person meeting in April 2015 with officials from the FBI and U.S. Attorney's Office. (AR:537.) SEC officials were invited to participate in that meeting and did ultimately attend. (*Id.*)

During that meeting, Bass personally led the discussion of an 80-page presentation and supporting documents in which he explained his findings about

UDF. (AR:229, 251-330, 506, 537-538.) Over the next several months, Bass continued his research and analysis, working with his team at Hayman to produce hundreds of pages of additional materials that were shared and discussed with SEC officials at Bass's direction and on his behalf. (AR:221, 332-436, 506, 538, 542.)

To formalize his information sharing and to comply with existing SEC whistleblower regulations, Bass hired an attorney who filed a "Form TCR" with the SEC on January 20, 2017. (AR:210-217.) TCR stands for "Tip, Complaint, or Referral." (AR:212.) As the SEC explained in its 2011 rulemaking, "Form TCR, and the instructions thereto, were designed to capture basic identifying information about a complainant and to elicit sufficient information to determine whether the conduct alleged suggests a violation of the Federal securities laws." 76 Fed. Reg. 34,300, 34,337 (June 13, 2011). The Form TCR in this case listed Bass as the sole complainant and was signed by Bass alone (AR:212, 214-215, 217), though the cover letter and addendum reference Hayman as well (AR:208-209, 218).

### C. Bass's information was vital to the SEC's successful efforts to obtain a multimillion-dollar recovery.

As a direct result of the information developed and shared by Bass, the SEC filed a civil complaint against UDF and several UDF executives in July 2018. (*See* AR:3-24.) The complaint drew heavily from Bass's information to allege many of the same securities-law violations he had uncovered: undisclosed Ponzi-like

distributions between different UDF entities to pay earlier investors,[3] impaired loans extended by UDF but not adjusted under proper accounting principles,[4] and UDF's failure to disclose the lack of development on its real property.[5] The summary chart below details just a few of the dozens of examples of links between information Bass reported to the SEC and allegations that the SEC ultimately asserted against UDF:

| Bass Reported | The SEC Alleged |
| --- | --- |
| UDF "markets itself to retail investors as an opportunity to diversify portfolios with 'unique and fundamentally sound investments' in affordable residential real estate" but in reality, the "UDF umbrella exhibits characteristics emblematic of a Ponzi-like scheme." (AR:252.) | "UDF used money from a newer fund to pay distributions to investors in an older fund, without adequately disclosing the use of funds and the nature and status of loans made to developers." (AR:3-4 ¶ 1.)  "UDF did not disclose the true nature of the transactions giving rise to the distributions"; instead, UDF investors "were led to believe that their investments were being deployed towards active real estate projects." (AR:13 ¶ 32.) |

---

[3] *Compare* AR:11 ¶ 25 *with* AR:258, 386; AR:11-12 ¶ 26 *with* AR:258, 330; AR:12 ¶ 26 *with* AR:260 *and* AR:439; AR:12 ¶ 27 *with* AR:252; AR:12-13 ¶¶ 27, 30 *with* AR:254; AR:12-13 ¶ 29 *with* AR:265; AR:13-14 ¶ 32 *with* AR:252-253; AR:14 ¶¶ 33-34 *with* AR:258.

[4] *Compare* AR:14-16 ¶¶ 35, 37, 39 *with* AR:270; AR:16 ¶ 39 *with* AR:366; AR:16 ¶ 39 *with* AR:367-369; AR:14-16 ¶¶ 35, 37, 39 *with* AR:220; AR:16 ¶ 39 *with* AR:277-278.

[5] *Compare* AR:17 ¶¶ 42–43 *with* AR:330; AR:16-17 ¶ 41 *with* AR:287; AR:17 ¶¶ 42–43 *with* AR:292; AR:16-17 ¶¶ 41–43 *with* AR:293; AR:17 ¶ 42 *with* AR:466-468; AR:17 ¶ 42 *with* AR:295, 300.

| Bass Reported | The SEC Alleged |
|---|---|
| Bass provided charts of "three loan examples" from specific projects showing that "UDF loans . . . accrue larger and larger balances, have no cash receipts and are extended when the maturity date comes due." (AR:265.) | "Money advanced by UDF IV was reflected in UDF IV's disclosures as an increase in a specific loan's carrying balance" and "UDF IV's disclosures showed developers borrowing increasing amounts related to specific real estate projects." (AR:12-13 ¶ 29.) |
| "We visited a handful of development sites which secure UDF IV loans and believe the loans are significantly under-collateralized and would be impaired by potentially 50-75% under reasonable valuation parameters." (AR:270.) | "The disclosures further stated that full collectability for this loan was considered probable. But, UDF knew or should have known that full collectability . . . was not probable and, at best, highly uncertain." (AR:15 ¶ 37.) |
| "In many cases, loans are listed on raw land scheduled to be developed that are not income producing for several years" including:<br><br>• "Three years later and upon maturity of the note, there are a total of 12 homes either under construction or complete";<br>• In "another instance, almost three years after the issuance of 4 separate 13% loans, there is no development"; and<br>• "[T]he collateral for this loan [Travis Ranch] seems to be an undeveloped incremental phase . . . which has not been developed or finished in the past 5 years."<br><br>(AR:292, 295, 330 (emphasis omitted).) | "In some cases, there was no development at all on the properties, even after they had been in UDF IV's portfolio for years. … Nevertheless UDF IV underwrote several loans that were disclosed in its 2014 Form 10-K that were for unimproved real property." (AR:17 ¶¶42-43.) |

The SEC agreed to a quick settlement of the non-scienter-based charges in its complaint against UDF and obtained nearly $8.3 million in disgorgement, prejudgment interest, and civil penalties. (*See* AR:1.) The SEC also allowed UDF management to remain in place despite the company's ongoing failures to file updated financial statements. *See In re United Dev. Funding III, LP*, Rel. No. 89535 (S.E.C. Aug. 12, 2020).[6] This relatively soft touch stands in stark contrast to the approach taken by the Department of Justice and the United States Attorney's Office for the Northern District of Texas, which continued investigating the many red flags raised by UDF's conduct, indicted and tried several UDF executives for securities and wire fraud in 2022, and prevailed in securing criminal convictions and jail time. *See United States v. Greenlaw*, No. 4:21-CR-289-O (N.D. Tex.), *appeal filed*, No. 22-10511 (5th Cir.).

In any event, the SEC announced its pre-packaged settlement with UDF and the non-scienter charges in a July 3, 2018 "Litigation Release" posted to its website. (AR:1.) This release, also known as the "Notice of Covered Action," is a significant step in the SEC's whistleblower program. *See* 17 C.F.R. § 240.21F-10(a). As the SEC explained in its 2011 rulemaking, any whistleblower who believes that he is entitled to an award is required to submit an application using the SEC's "Form WB–APP";

---

[6] *Available at* https://www.sec.gov/litigation/opinions/2020/34-89535.pdf.

but "[a] whistleblower can only submit a Form WB–APP after there has been a 'Notice of Covered Action' published on the Commission's Web site pursuant to [Rule 21F–10]." 76 Fed. Reg. at 34,354. Both the Rule in effect at the time and the instructions on the SEC's website required the prospective whistleblower to file Form WB-APP within "ninety (90) days from the date of the Notice of Covered Action" to which the claim relates. 17 C.F.R. § 240.21F-10(a); *see also* AR:28. Bass followed those instructions and filed his completed Form WB-APP on October 4, 2018, thus formally requesting his statutory share of the SEC's recovery. (AR:25-26; *see also* AR:545 (conceding that Bass timely filed award claim).)

## D. The SEC nevertheless denied Bass's application for a whistleblower award.

Bass heard essentially nothing on the merits of his whistleblower application for the next three years. Then, in July 2021, Bass received a "Preliminary Determination" from the SEC's Office of the Whistleblower recommending the denial of his award application in full. (*See* AR:507-511.)

Despite relying on Bass's information throughout its complaint against UDF, the SEC determined that Bass ("Claimant 2") should be denied any whistleblower recovery for two reasons: (1) the SEC concluded that Bass did not qualify as a whistleblower because he "never individually provided the Commission with information about a possible violation of the securities laws," as required under 15

U.S.C. § 78u-6(a)(6); and (2) the SEC faulted Bass for failing to submit the Form TCR "within 30 days of the submission of" the information he had initially shared with the SEC, as required by the current version of SEC Rule 21F-9(e). (AR:511.)

Bass timely appealed the Preliminary Determination to the SEC, arguing that both stated reasons for denying his application were incorrect. (AR:532.) On the first ground, Bass explained that he had acted in his individual capacity; that Hayman employees supported those efforts at his direction and on his behalf; and that while the whistleblower rules "require[] a whistleblower to be an individual rather than a company or entity, there is no requirement that every statement and all of the information come *directly* from the mouth of or email address of that individual." (*Id.* (emphasis in original).) On the timing ground, Bass argued that his TCR, filed in January 2017, was not subject to the 30-day filing deadline enacted in December 2020 and, alternatively, that he met the requirements for a deadline waiver established by prior SEC determinations. (AR:534-536.) Bass also highlighted the SEC's reliance on the significant and original information he provided and the absence of any ruling that his information would not otherwise qualify for an award. (AR:536.)

The SEC was unmoved. On December 2, 2022, the SEC issued a Final Order confirming the denial of any award to Bass (again identified as "Claimant 2"). (AR:543-551.)[7] After summarizing the arguments raised in Bass's appeal of the Preliminary Determination, the SEC reaffirmed both of its previously-stated grounds for denial. (AR:548.)

The SEC first explained that "the claim that [Bass] provided information in [his] individual capacity is unsupported by the record," including because there was "no evidence" that Hayman's general counsel or employees actually represented Bass in his individual capacity, rather than representing the entity, when they presented information to the SEC. (*Id.*)

On the timing issue, the SEC barely grappled with its application of a regulatory deadline that didn't exist when Bass filed his whistleblower requests, noting only that Bass had "constructive notice" of the requirement to file a TCR and suggesting that the deadline was a previously-unwritten rule. (*See* AR:546, 549.) The SEC then analyzed Bass's request for a deadline waiver and briefly attempted to distinguish his circumstances from prior cases where waivers had been granted. (AR:550.) Bass filed a timely petition for review of the Final Order. (Dkt. 1.)

---

[7] The Final Order also confirmed an award to another whistleblower whose identity remains redacted. (AR:545, 548-549.) This separate award has no bearing on the current appeal because Section 21F expressly permits awards to more than one whistleblower. *See* 15 U.S.C. § 78u-6(b)(1).

## SUMMARY OF THE ARGUMENT

The SEC acted arbitrarily and capriciously in denying Bass's whistleblower request on both stated grounds. This Court should set aside the Final Order.

*First*, the SEC's conclusion that Bass did not act as an "individual" was arbitrary and capricious because it ignored contradictory record evidence and imposed a presumption of entity action unsupported by the statute. The record is clear. Bass conducted extensive research and analysis to uncover red flags of the UDF fraud. Bass determined to tell the SEC what he knew and worked through personal contacts to arrange a meeting where he led a discussion of his analysis. Bass directed Hayman personnel to provide the SEC with additional information and explanation on his behalf over the succeeding months. And Bass hired an attorney to file a TCR, and later award application, and signed the forms as the sole whistleblower. The SEC reached its contradictory, "no evidence" conclusion by ignoring this individual-capacity evidence and imputing Bass's personal actions to Hayman without statutory or evidentiary grounds for doing so.

*Second*, the SEC's decision to enforce an after-the-fact regulatory deadline was arbitrary, capricious, and otherwise not in accordance with law. Bass complied with the governing regulations at the time he filed his TCR, and the SEC cited no contemporaneous authority to the contrary. Instead, it relied primarily on a

"clarification" issued a year and a half after Bass's filing. The clarification, in turn, pointed to an unwritten rule apparently requiring the TCR to be the first point of contact with the SEC. But this "rule" was neither enacted nor followed by the SEC. Indeed, the SEC invited contact through numerous channels, required only that TCRs be filed before the underlying final judgment, and regularly waived late filings when other requirements were satisfied. Because the decision to enforce the 30-day deadline imposed new duties on Bass with respect to a filing long since completed, it was impermissibly retroactive. The decision was also arbitrary and capricious, as was the denial of Bass's waiver request, which failed to address seven of the eight factors raised by Bass and relied upon by the SEC in earlier waiver determinations.

Because both bases for the SEC's Final Order violate the APA, the Final Order should be vacated and the case remanded to the SEC for further proceedings.

## ARGUMENT

### I.     The standard of review for the SEC's whistleblower decision, while "narrow," is "not toothless."

This case arises from an administrative scheme that is supposed to incentivize and reward the reporting of securities-law violations to the SEC. Section 21F of the Securities Exchange Act of 1934 says the SEC "shall pay an award or awards to 1 or more whistleblowers who voluntarily provided original information to the

Commission that led to the successful enforcement of the covered judicial or administrative action." 15 U.S.C. § 78u-6(b)(1).

"[W]histleblower" is defined by the statute to mean "any individual who provides, or 2 or more individuals acting jointly who provide, information relating to a violation of the securities laws to the Commission, in a manner established, by rule or regulation, by the Commission." *Id.* § (a)(6). A "covered" action includes "any judicial or administrative action brought by the Commission under the securities laws that results in monetary sanctions exceeding $1,000,000." *Id.* § (a)(1). Although the amount of any whistleblower award is committed to the agency's sole discretion under the statute, the eligibility determination is not so flexible: the statute mandates that the SEC "shall pay an award or awards" to any whistleblowers who meet those elements. *See id.* §§ (b)(1), (c)(1)(A).

Section (f) provides for appellate review of the SEC's decision "in accordance with Section 706 of" the Administrative Procedure Act. *Id.* § (f). Agency decisions must be set aside under the APA if they are arbitrary and capricious or otherwise not in accordance with law. 5 U.S.C. § 706(2)(A). This review is "narrow" but "not toothless," and after recent opinions by the Supreme Court and this Court, "has serious bite." *Data Mktg. P'ship, LP v. U.S. Dep't of Lab.*, 45 F.4th 846, 856 (5th Cir. 2022) (citing *DHS v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891 (2020)).

This Court's review of agency decisionmaking should be "searching and careful." *Univ. of Tex. M.D. Anderson Cancer Ctr. v. U.S. Dep't of Health & Hum. Servs.*, 985 F.3d 472, 475 (5th Cir. 2021). The focus is on "the record before the agency at the time of its decision" and "the agency's stated rationale at the time of its decision"—courts "must disregard any *post hoc* rationalizations." *Luminant Generation Co. v. EPA*, 675 F.3d 917, 925 (5th Cir. 2012). In fact, agency reliance on post hoc rationalizations "is relevant evidence that the action is arbitrary and capricious." *Data Mktg. P'ship*, 45 F.4th at 856.

Agency decisions must be the result of "reasoned decisionmaking" based on a "logical and rational" process that embodies a "rational connection between the facts found and the choice made." *Huawei Techs. USA, Inc. v. FCC*, 2 F.4th 421, 433-34 (5th Cir. 2021) (internal quotation omitted). Agency decisions that contain "unexplained inconsistencies in the rulemaking record" or that are "internally inconsistent and inadequately explained" must be set aside as arbitrary and capricious. *Sierra Club v. EPA*, 939 F.3d 649, 664 & n.76 (5th Cir. 2019) (internal quotations omitted); *see also Chamber of Com. v. U.S. Dep't of Lab.*, 885 F.3d 360, 382 (5th Cir. 2018) ("Illogic and internal inconsistency are characteristic of arbitrary and unreasonable agency action.").

Thus, agency action will be set aside as arbitrary and capricious if the agency:

- "relied on factors which Congress has not intended it to consider,"

- "entirely failed to consider an important aspect of the problem,"

- "offered an explanation for its decision that runs counter to the evidence before the agency," or

- offered an explanation that "is so implausible that it could not be ascribed to a difference in view or the product of agency expertise."

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Similarly, "any action premised on reasoning that fails to account for relevant factors or evinces a clear error of judgment" will be vacated. *M.D. Anderson Cancer Ctr.*, 985 F.3d at 475 (internal quotations omitted).

The SEC overstepped those boundaries—and its decision denying Bass's whistleblower claim must be vacated under the APA—for two independent reasons.

## II.     The SEC acted arbitrarily and capriciously in concluding that Bass did not act in his individual capacity and thus was not a whistleblower.

*First*, the SEC improperly concluded that Bass is not a "whistleblower" under the statute because he did not act as an individual. That decision was wrong as a matter of fact and law. To reach that conclusion, the SEC ignored—and thus reached a decision contradicted by—undisputed evidence establishing that Bass provided information to the SEC as an individual and applied for a whistleblower award as an

individual. Moreover, the SEC's decision improperly rewrote the statute by imposing a presumption of entity action that has no basis in the statutory text.

### A. The SEC ignored undisputed evidence that contradicts its conclusion and shows that Bass provided information to the SEC in his individual capacity.

The SEC does not dispute that Bass and Hayman provided significant, original information that the agency used in its complaint against UDF. (*Compare* AR:536 *with* AR:547-549.) But it denied Bass's whistleblower application based on the erroneous determination that he did not act as an individual, finding his arguments to that effect were "unsupported by the record." (AR:548.) The only way the SEC could have reached that conclusion was by burying its head in the sand and ignoring contradictory record evidence in contravention of its duties under the APA. *See Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43 (agency acts arbitrarily and capriciously when reaching a decision that "runs counter to the evidence before the agency"); *Amin v. Mayorkas*, 24 F.4th 383, 394 (5th Cir. 2022) ("Total failure to consider important evidence is a basis for setting aside agency action.").

From beginning to end, Bass was personally involved in providing information to the SEC and did so in his individual capacity. The red flags about UDF were initially uncovered through Bass's investigation and further developed through his "continuing research, review, and analysis." (AR:537-538.) With that information

in hand, "it was Mr. Bass in his personal capacity who determined to report his findings to the SEC." (AR:538.) He started by directing Hayman's general counsel to set up a meeting with the SEC, and when that did not bear fruit, Bass leveraged his personal contacts to arrange a meeting with the criminal authorities as well as the SEC. (AR:537.) Once there, Bass personally "led the discussion and walked the government representatives through" the information he and his team had uncovered. (AR:537-538.) For several months after, Bass continued his analysis with the assistance of his team at Hayman and directed Hayman staff to share that information with SEC staff in phone calls and meetings. (*See* AR:506, 538, 542.)

To formalize those efforts, Bass hired an attorney and filed a Form TCR listing himself as the sole complainant. (AR:212.) Although the TCR materials are somewhat inconsistent on this point, they mostly refer to "a hedge fund manager" (Bass) as the "Whistleblower." (AR:214-215.) The TCR is signed by Bass alone. (AR:217; *see* 76 Fed. Reg. at 34,336-37 (discussing requirement that the "whistleblower" sign the TCR under Rule 21F-9).) Both the cover letter and TCR supplement further confirm that, while Bass and his team at Hayman worked together to pull the thread on UDF's purposefully obscured scheme, Bass's

contributions were separate from Hayman's and personal to him.[8] (*See* AR:208 (filing made by "Bass as well as Hayman"), AR:218 (similar).)

The SEC's Final Order ignored nearly all of this individual-capacity evidence, which is enough on its own to render its decision on Bass's individual status arbitrary and capricious. *See, e.g.*, *Texas v. United States*, 40 F.4th 205, 227-28 (5th Cir. 2022) (agency decision failed to consider necessary evidence); *Wages & White Lion Invs., L.L.C. v. FDA*, 16 F.4th 1130, 1140 (5th Cir. 2021) (same).

Instead of crediting the extensive evidence of Bass's individual involvement, the SEC myopically focused on the acts of Hayman's general counsel (Christopher Kirkpatrick) and other employees, finding a lack of evidence that they were acting at Bass's direction on his personal behalf. (AR:548.) But Kirkpatrick testified otherwise, stating in his declaration that his interactions with the SEC were undertaken "at the direction of Mr. Bass," (AR:537-538), and confirming that he "was working at Kyle's sole direction on behalf of him and [Hayman]." (AR:542.) The record before the agency also included a follow-up email from Kirkpatrick confirming that he "represented [Bass] personally as well as representing his various companies, including Hayman Capital Management." (*Id.*)

---

[8] As the SEC noted, Bass used personal counsel to file the TCR and award application, further illustrating that he was acting as an individual, not as Hayman. (*See* AR:550 n.18.)

This evidence, ostensibly acknowledged by the SEC but ultimately ignored, contradicts the SEC's conclusion that the record "does not demonstrate that the entity's general counsel or employees ever represented anyone other than the entity when providing information to the SEC." (AR:548.) This "[i]llogic and internal inconsistency" is "characteristic of arbitrary and unreasonable agency action" that must be set aside. *Chamber of Com.*, 885 F.3d at 382; *see also Sw. Elec. Power Co. v. EPA*, 920 F.3d 999, 1019 (5th Cir. 2019) (setting aside agency decision where evidence established agency's chosen technology was "demonstrably ineffective"); *Desoto Gen. Hosp. v. Heckler*, 766 F.2d 182, 185 (5th Cir. 1985) (arbitrary and capricious to rely on study for uses the study itself disclaimed).

### B. The SEC concocted a presumption against individual filer status that is unsupported by the statute.

The SEC's analysis also missed the mark for another related but distinct reason. In focusing on Hayman's involvement to the exclusion of Bass, the SEC effectively rewrote the statutory definition of "whistleblower," imposing out of whole cloth a presumption imputing an individual's actions to an employer or other affiliated entity rather than to the individual. (*See* AR:548.)

The distorting impact of this presumption is best illustrated by the SEC's analysis of the initial meeting with Bass and Hayman employees in April 2015. After begrudgingly acknowledging the evidence that Bass arranged the meeting and led the

discussion, the SEC batted that pesky fact aside by finding that Bass failed to prove that *he himself* was acting in his "personal capacity rather than on behalf of" Hayman. (AR:548.) Left unexplained is how Bass or any individual with a wholly-owned business could meet this standard and rebut the SEC's presumption of entity action short of literally wearing a hat that says "individual capacity." Here, Bass personally conducted extensive research and analysis, scheduled a meeting with governmental authorities, attended the meeting in person, and led the discussion of his analysis. (AR:537-538.) He filed and signed the TCR as the sole complainant. (AR:212, 217.) The natural conclusion to be drawn from the evidence is that he was acting as an individual, not an entity.

The statute does not require more. *See* 15 U.S.C. § 78u-6(a)(6) (defining a whistleblower as "any individual who provides . . . information relating to a violation of the securities laws"). By imposing a presumption of entity action that creates evidentiary hurdles beyond what the statute requires, the SEC violated the "core administrative-law principle that an agency may not rewrite clear statutory terms to suit its own sense of how the statute should operate" *Tex. Med. Ass'n v. U.S. Dep't of Health & Hum. Servs.*, 587 F. Supp. 3d 528, 541-42 (E.D. Tex. 2022) (HHS subordinated statutory factors and imposed a heightened burden of proof not present in the statute). The SEC's decision should be set aside as arbitrary and capricious

for this additional reason. *See Util. Air Regul. Group v. EPA*, 573 U.S. 302, 325-28

(2014) (EPA improperly modified statutory thresholds); *M.D. Anderson Cancer Ctr.*,

985 F.3d 472 at 475-76 (HHS improperly applied penalty amounts exceeding

statutory maximums); *Chamber of Com.*, 885 F.3d at 381 (Department of Labor

impermissibly attempted to redefine statutory term).

### III. The SEC acted arbitrarily and capriciously in retroactively imposing a filing deadline enacted nearly four years after Bass's initial filings and refusing to waive it.

*Second*, the SEC improperly denied Bass's award application on timeliness

grounds by inexplicably finding that he failed to comply with a regulatory deadline

that did not exist when he submitted his claim. (AR:548-550.) Although that after-

the-fact deadline should never have been applied in the first place, the SEC

compounded its error by refusing to waive the deadline like it has for others in similar

circumstances. (AR:549.) Both decisions were arbitrary and capricious, and the

imposition of the deadline here was also impermissibly retroactive and thus contrary

to law. The SEC's untimeliness ruling should be vacated.

### A. The SEC's insistence on applying an after-the-fact regulatory deadline was legally impermissible, arbitrary, and capricious.

The relevant facts here are as simple as they are damning to the SEC's

decision. In its orders, the SEC rejected Bass's whistleblower application because he

"failed to submit a Form TCR to the Commission within 30 days of the submission

of information upon which [his] award claim is based." (AR:546.) To support that conclusion, the SEC cited Rule 21F-9(e), which (today) says that a whistleblower must comply with the TCR procedures "within 30 days of when you first provide the Commission with original information that you rely upon as a basis for claiming an award." 17 C.F.R. § 240.21F-9(e). The problem is: that language was not enacted and effective until December 7, 2020, almost *four years after* Bass filed his TCR (January 20, 2017) and *five and a half years* after Bass initially provided his discoveries to the SEC (April 2015). *See* 85 Fed. Reg. 70,898, 70,922, 70,945 (Nov. 5, 2020).

There was no 30-day filing deadline at the relevant times here. Under the version of Rule 21F-9 that was in effect at the time Bass started blowing the whistle, the SEC simply required that a prospective whistleblower must "submit [its] information about a possible securities law violation by either of these methods: (1) Online, through the Commission's Web site located at http://www.sec.gov; or (2) By mailing or faxing a Form TCR (Tip, Complaint or Referral) (referenced in § 249.1800 of this chapter) to the SEC Office of the Whistleblower[.]" 17 C.F.R. § 240.21F-9(a) (2011); *see* 76 Fed. Reg. at 34,368. Bass complied with that simple requirement in 2017. The SEC's insistence that he also comply with an as-yet-unwritten timing requirement was both an exercise in impermissible retroactivity and was another arbitrary and capricious decision.

### 1. The 30-day deadline applied by the SEC is inapplicable to Bass because it imposes an impermissible retroactive effect.

There's no question here that the SEC applied its new filing deadline retroactively. The only question is whether that was legally appropriate. It was not.

Although retroactivity is not always improper, it was here because the application of Rule 21F-9(e) to Bass's four-year-old filing created an impermissible retroactive effect that should have rendered the regulation "inapplicable to the event or act in question." *Germain v. US Bank Nat'l Ass'n*, 920 F.3d 269, 275 (5th Cir. 2019) (internal quotation omitted). A regulation is impermissibly retroactive when it would "impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Handley v. Chapman*, 587 F.3d 273, 283 (5th Cir. 2009). In making this assessment, courts apply "commonsense, functional judgment about whether the new provision attaches new legal consequences to events completed before its enactment." *Germain*, 920 F.3d at 275 (internal quotation omitted).

Here, the SEC's imposition of the new Rule unquestionably imposed on Bass new duties (the 30-day deadline) and legal consequences (the related award denial) to a transaction (the TCR filing) that was long since completed at the time the Rule became effective. Talk about a "surprise switcheroo." *See Wages & White Lion*, 16 F.4th at 1138 (internal quotations omitted). For that reason alone, the 30-day-filing

requirement should not have been applied to Bass. *See United States v. Gutierrez*, 443 F. App'x 898, 908 (5th Cir. 2011) (district court ordered to apply old regulation on remand where new regulation had impermissible retroactive effect).

The SEC's attempts to defend its retroactivity decision do not withstand scrutiny. The SEC first claimed that Rule 21F-9(e) applied to all award applications pending on its effective date (AR:547 n.8), but this circular argument is no defense: new procedural rules "may be made to apply to pending procedures" only "if injury or prejudice does not result therefrom." *Handley*, 587 F.3d at 283 (quotation omitted). That was manifestly not the case here, where the SEC's retroactive application of the deadline prejudiced Bass by supporting the denial of his claim.

The SEC also observed that the TCR filing requirement was first imposed in 2011. (AR:549.) That misses the point by a mile: there's no question that Bass filed a TCR and thus complied with the only relevant requirement at the time. (AR:207-506.) The SEC overstepped by changing the rules about *when* Bass needed to file his TCR and demanding that he meet a deadline he could not have known about.

The SEC then pivoted from that generic requirement to a 2018 "clarification" purporting to solidify its previously unannounced "approach" requiring a TCR filing "the first time an individual provides information to the Commission." (AR:549.) But there was no basis for applying this unwritten rule to Bass given that

even the clarification was issued *seventeen months after* Bass's filing and has no basis in the SEC's regulations or decisions. Neither original Rule 21F-9 nor its supporting comments contained any requirement that a whistleblower first provide information to the SEC through a Form TCR. *See generally* 76 Fed. Reg. at 34,300. The literal text of the Rule allowed for information to be submitted on the SEC's website. 17 C.F.R. § 240.21F-9(a) (2011). And the only SEC decisions on the issue simply required a filing before the issuance of a final judgment or order in the underlying enforcement action, which is not even arguably a problem here. *See* [Redacted] Final Order (S.E.C. Sept. 9, 2017);[9] [Redacted] Final Order (S.E.C. Feb. 11, 2019);[10] [Redacted] Final Order (S.E.C. Apr. 20, 2019).[11]

The SEC's so-called clarification is also contradicted by its own practice and that of other agencies applying substantially similar regulatory schemes. Before enacting Rule 21F-9(e)—and even now—the SEC's own website encouraged whistleblower tips through numerous channels. *See, e.g.*, Kohn, Kohn and Colapinto, LLP, Comment Letter on Proposed Amendment to Rule 21F-9(e) (May 6, 2019) at 2-3.[12] Consistent with this multipronged outreach, SEC award decisions routinely

---

[9] *Available at* https://www.sec.gov/files/OWB%20Final%20Order%20090917_2.pdf.

[10] *Available at* https://www.sec.gov/files/Denial%20Orders%202.11.19.pdf.

[11] *Available at* https://www.sec.gov/files/Final%20Order_4.20.2019.pdf.

[12] *Available at* https://www.sec.gov/comments/s7-16-18/s71618-5453107-184910.pdf.

grant awards to whistleblowers like Bass who provide the SEC with original information prior to filing the required form.[13] In fact, in adopting the 2020 amendments to the whistleblower rules (including the new 30-day deadline), then-SEC Commissioner Jay Clayton emphasized that the Rules are supposed to provide grace to whistleblowers who provide valuable information but don't strictly comply with every regulatory requirement and reiterated that the agency would always have discretion to grant relief where appropriate.[14]

Other federal agencies applying similar whistleblower programs have done just that, focusing on the substance of the whistleblower's contributions rather than the form of the filing—or have been forced into that result in litigation. *See, e.g.*, *Whistleblower 21276-13W v. Comm'r*, 144 T.C. 290, 303-06 (T.C. 2015) (under a whistleblower scheme on which the SEC scheme was modeled, rejecting the IRS's contention that whistleblowers were required to file a form equivalent to the TCR to

---

[13] *See, e.g.*, *In re Claims for Award*, Rel. No. 85412, at 4 (S.E.C. Mar. 26, 2019), *available at* https://www.sec.gov/rules/other/2019/34-85412.pdf; *In re Claims for Award*, Rel. No. 82181, at 4 n.5 (S.E.C. Nov. 30, 2017), *available at* https://www.sec.gov/rules/other/2017/34-82181.pdf; *In re Claim for Award*, Rel. No. 81227, at 2 n.4 (S.E.C. July 27, 2017), *available at* https://www. sec.gov/rules/other/2017/34-81227.pdf; *In re Claim for Award*, Rel. No. 79747, at 2 n.3 (S.E.C. Jan. 6, 2017), *available at* https://www.sec.gov/rules/other/2017/34-79747.pdf.

[14] Jay Clayton, *Strengthening Our Whistleblower Program* (Sept. 23, 2020), *available at* https://www.sec.gov/news/public-statement/clayton-whistleblower-2020-09-23.

qualify for an award);[15] *In re Claims for Award*, Determination No. 20-WB-02 (C.F.T.C. Dec. 19, 2019) (under nearly identical whistleblower regulations under the same statute, issuing whistleblower award even though Form TCR not filed until after investigation concluded);[16] *In re Claims for Award*, Determination No. 18-WB-01, at 2, 5 (C.F.T.C. July 12, 2018) (same).[17] The SEC erred in doing the opposite: denying relief on the basis of a procedural technicality that wasn't even technically applicable. The SEC's timeliness ruling fails for this reason alone.

\*    \*    \*    \*    \*    \*

The SEC's Final Order cites no contemporaneous authority that imposed any filing deadline at the time Bass blew the whistle—because there was none. Bass complied with the regulations governing his TCR filing at the time he filed it, and the SEC's facially unfair attempt to impose a deadline long after the fact should be given no effect. *See, e.g.*, *Germain*, 920 F.3d at 275 (courts construe retroactive regulations "as inapplicable to the event or act in question").

---

[15] *See also* S. REP. NO. 111-176, at 111 (2010) (SEC whistleblower program "is modeled after a successful IRS Whistleblower Program enacted into law in 2006").

[16] *Available at* https://www.whistleblower.gov/sites/whistleblower/files/2019-12/20-WB-02.pdf.

[17] *Available at* https://www.whistleblower.gov/sites/whistleblower/files/2018-07/18-WB-01%20-%20Public%20Order.pdf; *see also* 76 Fed. Reg. 53,172, 53,172 n.6 (Aug. 25, 2011) ("[CTFC] staff has consulted with SEC staff regarding drafting of rules to implement the Commission's and SEC's respective Dodd-Frank Act whistleblower provisions. . . . To the extent that the Commission and SEC reached the same conclusions on common issues, the Commission endeavored [to] harmonize its rule text with the SEC's final rule text.").

### 2. Retroactive imposition of the 30-day deadline to Bass is arbitrary and capricious.

The SEC's decision not only gave impermissible retroactive effect to Rule 21F-9(e) but was also arbitrary and capricious. The SEC's rationale for applying the deadline here failed multiple basic APA requirements:

- the SEC "inadequately explained" how its cited authorities retroactively governed Bass's filing or how he could have possessed constructive notice of and complied with not-yet-issued regulations and guidance, *Sierra Club*, 939 F.3d at 664;

- the SEC offered no "rational connection" between the facts and law existent at the time of Bass's filing and its ultimate decision, *Huawei Techs.*, 2 F.4th at 434; and

- the SEC failed to offer "a reasoned analysis" for departing from its own decisions and those of other agencies applying substantially similar whistleblower programs, *Jupiter Energy Corp. v. FERC*, 407 F.3d 346, 349 (5th Cir. 2005).

In sum, the SEC's decision to enforce a regulatory deadline established four years after Bass's filing "evinces a clear error of judgment" that should be set aside as arbitrary and capricious. *See M.D. Anderson Cancer Ctr.*, 985 F.3d at 475.

### B. The SEC's refusal to apply its own waiver precedent as requested by Bass was arbitrary and capricious.

To make matters worse, the SEC acted arbitrarily and capriciously by refusing to waive the filing deadline and failing to follow its own precedent doing just that for other similarly-situated applicants.

"It is a bedrock principle of administrative law that an agency must treat like cases alike." *M.D. Anderson Cancer Ctr.*, 985 F.3d at 479 (internal quotation omitted); *see also Noranda Alumina, L.L.C. v. Perez*, 841 F.3d 661, 665 (5th Cir. 2016) ("An agency cannot merely flit serendipitously from case to case, like a bee buzzing from flower to flower, making up the rules as it goes along.") (internal quotation omitted). At a minimum, an agency "must cogently explain why it has exercised its discretion in a given manner and must supply a reasoned analysis for any departure from other agency decisions." *Jupiter Energy Corp.*, 407 F.3d at 349 (internal quotation omitted).

The SEC failed to do so here. In support of his waiver request, Bass cited to SEC precedent and explained why the eight factors relied on by the SEC to grant waivers in other cases supported a similar waiver here. (AR:534-535 (citing *In re Claim for Award*, Rel. No. 90580 (S.E.C. Dec. 7, 2020)).) Those factors supported a waiver because:

(1)     Bass provided written information directly to SEC staff;

(2)     Bass's communications unambiguously indicated that he intended to submit the information as a whistleblower;

(3)     Bass's information was credible and of high quality, to the point that SEC staff used this information in its investigation and complaint against UDF;

(4)     SEC staff viewed Bass as a whistleblower throughout the investigation;

(5)   Bass's initial attorney offered ineffective assistance in handling the whistleblower application;

(6)   Bass did not participate in UDF's misconduct;

(7)   the record clearly and convincingly supports that Bass would otherwise be entitled to an award; and

(8)   denial of an award would result in unfairness to Bass and would deter others from reporting findings of misconduct to the SEC.

(AR:534-535.) In response to these arguments, the SEC really just addressed one factor (ineffective assistance of counsel) and even that discussion was superficial and insufficient. (AR:550.) The Final Order did not mention, much less attempt to analyze and distinguish, the seven other factors set forth in Release No. 90580 and urged by Bass as supporting a similar waiver here, perhaps because the SEC could not dispute them. (*See id.*; *supra* at 5-11.)

That is simply not good enough. The SEC's failure to "explain why it has exercised its discretion" to deny the waiver and "supply a reasoned analysis for" its departure from Release No. 90580 was arbitrary and capricious and should be set aside. *Jupiter Energy Corp.*, 407 F.3d at 349-50 (FERC decision set aside as arbitrary and capricious for failing to follow and ruling inconsistently with earlier decision); *see also M.D. Anderson Cancer Ctr.*, 985 F.3d at 480 (HHS violated the APA where it "offered no reasoned justification for" its failure to follow past agency precedent).

## CONCLUSION AND PRAYER

For the foregoing reasons, Bass requests that the Court grant his petition for review, vacate the SEC's Final Order, and remand to the SEC for further proceedings. Bass further requests any additional relief to which he may be entitled.

Respectfully submitted,

*/s/ Andrew W. Guthrie*
Andrew W. Guthrie
Texas Bar No. 24078606
Katherine S. Addleman
Texas Bar No. 00905400
Ryan Paulsen
Texas Bar No. 24060397
HAYNES AND BOONE, LLP
2323 Victory Avenue, Ste. 700
Dallas, TX 75219
Telephone: (214) 651-5000
*andrew.guthrie@haynesboone.com*
*kit.addleman@haynesboone.com*
*ryan.paulsen@haynesboone.com*

COUNSEL FOR PETITIONER J. KYLE BASS

## CERTIFICATE OF SERVICE

I hereby certify that on the 21st day of March, 2023, I electronically transmitted the attached document to the Clerk of the Court of the 5th Circuit Court of Appeals using the ECF System of the Court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

*/s/ Andrew W. Guthrie*
Andrew W. Guthrie

## ECF CERTIFICATION

I hereby certify that (1) required privacy redactions have been made pursuant to 5th Cir. R. 25.2.13; (2) the electronic submission is an exact copy of the paper document pursuant to 5th Cir. R. 25.2.1; (3) the document has been scanned for viruses with the most recent version of a commercial virus scanning program and is free of viruses; and (4) the document will be maintained in paper form for three years after the mandate or order closing the case issues, per 5th Cir. R. 25.2.9.

*/s/ Andrew W. Guthrie*
Andrew W. Guthrie

## CERTIFICATE OF COMPLIANCE

1.    This brief complies with the type-volume limitation of FED. R. APP. P. 32(a)(7)(B) because:

■    this brief contains 7,664 words, excluding the parts of the brief exempted by FED. R. APP. P. 32(a)(7)(B)(i).

2.    This brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because:

■    this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2016, with 14-point Equity font in the text and 12-point Equity font in the footnotes.

*/s/ Andrew W. Guthrie*
Andrew W. Guthrie